UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------------- X

BRIAN PEREZ,

Plaintiff,

-against-

COUNTY OF NASSAU, NASSAU COUNTY SHERIFF ANTHONY J. LaROCCO, in his individual and official capacities, CORRECTIONS OFFICER CPL. MCCANN, in his individual and official capacities, CORRECTIONS OFFICER JEAN, in his individual and official capacities, CORRECTIONS OFFICER SMITH, in his individual and official capacities, and CORRECTIONS OFFICER JOHN DOES #1-10 (fictitiously named), in their individual and official capacities,

Defendants.

---------------------------------------------------------------------- X

**Docket No.:**

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff BRIAN PEREZ, by his attorneys, Horn Wright, LLP, complaining of Defendants COUNTY OF NASSAU, NASSAU COUNTY SHERIFF ANTHONY J. LaROCCO, in his individual and official capacities, CORRECTIONS OFFICER CPL. MCCANN, in his individual and official capacities, CORRECTIONS OFFICER JEAN, in his individual and official capacities, CORRECTIONS OFFICER SMITH, in his individual and official capacities, and CORRECTIONS OFFICER JOHN DOES #1-10 (fictitiously named), in their individual and official capacities, alleges as follows:

## PRELIMINARY STATEMENT

1. This is a civil rights action in which Plaintiff, BRIAN PEREZ ("PEREZ" and/or "Plaintiff") seeks relief from Defendants COUNTY OF NASSAU, NASSAU COUNTY SHERIFF ANTHONY J. LaROCCO, in his individual and official capacities, CORRECTIONS OFFICER CPL. MCCANN, in his individual and official capacities, CORRECTIONS OFFICER

JEAN, in his individual and official capacities, CORRECTIONS OFFICER SMITH, in his individual and official capacities, and CORRECTIONS OFFICER JOHN DOES #1-10 (fictitiously named), in their individual and official capacities (collectively, "Defendants") committing acts under color of law and depriving Plaintiff of rights secured under 42 U.S.C. § 1983 and the Fourth, Eighth, and Fourteenth Amendments to the Constitution of the United States and laws of the State of New York.

2. Plaintiff alleges that Defendants engaged in unlawful conduct. Specifically, during the course of Plaintiff's pre-trial detention at the Nassau County Correctional Center, Plaintiff was subjected to vicious assaults by Corrections Officers, causing physical harm and extreme pain and suffering, in violation of Plaintiff's Constitutional rights and New York State laws. Defendants' deliberate indifference to Plaintiff's safety caused his exorbitant injuries and violated his Fourth, Eighth, and Fourteenth Amendment rights against cruel and unusual punishment.

3. Plaintiff seeks damages, both compensatory and punitive, award of costs, disbursements, interest, attorney's fees, and such other and further relief as this Court deems just and equitable.

## JURISDICTION

4. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988 and the Fourth, Eighth, and Fourteenth Amendments of the United States Constitution. Jurisdiction is conferred upon this Court by 42 U.S.C. § 1983 and by 28 U.S.C. §§ 1331 and 1343(3) and (4) of the aforementioned Constitutional provisions.

5. Supplemental jurisdiction over Plaintiff's state law claims exists pursuant to 28 U.S.C. § 1367(a).

## VENUE

6. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b) since all of the events and omissions giving rise to Plaintiff's claims occurred within the County of Nassau; the actual place of employment of the individually named Defendants and Doe Officers is within the County of Nassau in the Eastern District of New York; and the County of Nassau is within the jurisdiction of the Eastern District of New York.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

7. Plaintiff sought to fulfill the requirements of the Prison Litigation Reform Act, 42 U.S.C. § 1997(e)(a), requiring inmates to exhaust available administrative remedies prior to filing suit under 42 U.S.C. § 1983 alleging violations of their Constitutional rights, but was denied access to the process and/or prevented from filing such by Defendants.

## NOTICE OF CLAIM

8. Plaintiff filed a timely Notice of Claim with the County of Nassau on or about January 21, 2025 in connection with the incident that occurred on or about September 5, 2025.

9. Defendant COUNTY OF NASSAU noticed and conducted a hearing pursuant to N.Y. Gen. Mun. Law § 50-h in connection with the aforementioned Notice of Claim on July 30, 2026.

10. More than 40 days have elapsed since the hearing pursuant to N.Y. Gen. Mun. Law § 50-h was conducted, and adjustment or payment thereof has been neglected or refused.

## THE PARTIES

11. Plaintiff BRIAN PEREZ is a resident of the United States who lives within the State of New York.

12. Upon information and belief, at all relevant times described herein, Defendant COUNTY OF NASSAU ("COUNTY") was and continues to be a municipal corporation organized and existing by virtue of the laws of the State of New York.

13. Upon information and belief, at all relevant times described herein, Defendant COUNTY, by its agents and/or employees, owned, operated, maintained, possessed, supervised, and controlled the Nassau County Sheriff's Department ("NCSD"), including the Nassau County Correctional Center ("NCCC") and all Corrections Officers thereof, and is responsible for providing a safe and secure environment for detainees in its custody. COUNTY is charged by the laws of the State of New York with authority to maintain the NCCC and is responsible for its confinement conditions and for the treatment of its inmates.

14. At all relevant times herein, NASSAU COUNTY SHERIFF ANTHONY J. LaROCCO ("LaROCCO") was the Sheriff of COUNTY, acting under color of state law, who is being sued herein in his individual and official capacities, and was responsible for providing a safe and secure environment for detainees in his custody. Defendant LaROCCO was responsible for the day-to-day operations of NCCC. As Sheriff, he had the custody, control, and charge of the NCCC and its detainees. LaROCCO was legally responsible, in whole or in part, for the operation of the NCCC, for the conditions therein, and the health and safety of persons confined or incarcerated there. Defendant LaROCCO retired from his position as Sherriff on July 31, 2026.

15. Upon information and belief, at all relevant times described herein, Defendant CORRECTIONS OFFICER CPL. MCCANN ("MCCANN") is an individual employed by COUNTY with an actual place of employment within the County of Nassau, State of New York, who is being sued in his individual and official capacities. At all relevant times described herein, MCCANN was acting under color of state law within the scope of his employment as a Corporal

and/or supervisor employed by Defendant COUNTY, and works under the supervision, direction, and/or control of the supervisors in the NCSD and NCCC.

16. Upon information and belief, at all relevant times described herein, Defendant CORRECTIONS OFFICER JEAN ("JEAN") is an individual employed by COUNTY with an actual place of employment within the County of Nassau, State of New York, who is being sued in his individual and official capacities. At all relevant times described herein, JEAN was acting under color of state law within the scope of his employment as a Corrections Officer employed by Defendant COUNTY, and works under the supervision, direction, and/or control of the supervisors in the NCSD and NCCC.

17. Upon information and belief, at all relevant times described herein, Defendant CORRECTIONS OFFICER SMITH ("SMITH") is an individual employed by COUNTY with an actual place of employment within the County of Nassau, State of New York, who is being sued in his individual and official capacities. At all relevant times described herein, SMITH was acting under color of state law within the scope of his employment as a Corrections Officer employed by Defendant COUNTY, and works under the supervision, direction, and/or control of the supervisors in the NCSD and NCCC.

18. Upon information and belief, at all relevant times described herein, Defendant CORRECTIONS OFFICER JOHN DOES #1-10 (fictitiously named) ("DOES") are individuals and employees of COUNTY with an actual place of employment within the County of Nassau, State of New York, who are being sued in their individual and official capacities. At all relevant times described herein, DOES were acting under color of state law within the scope of their employment as Corrections Officers and/or Supervisors employed by Defendant COUNTY, and work under the supervision, direction, and/or control of their supervisors in the NCSD and NCCC.

They were responsible for inmate movement within NCCC, housing designation and/or assignments, inmate classifications, and/or for leaving an officer-post unattended while inmate(s) assaulted PEREZ without any Corrections Officer(s)' intervention whatsoever.

19. Defendants MCCANN, JEAN, SMITH, and DOES are collectively referred to "Defendant COs".

**FACTUAL ALLEGATIONS**

20. At all relevant times herein, Plaintiff was lodged at NCCC as a pre-trial detainee under the care and custody of Defendants.

21. NCCC is located at 100 Carman Avenue, East Meadow, New York and, on information, is an agency, subdivision, and/or instrumentality of COUNTY.

22. On or about June 10, 2025, Plaintiff was laying down in his cell, when MCCANN entered and accused Plaintiff of having contacted his niece, who Plaintiff had a prior relationship with. Defendant MCCANN's niece would occasional contact Plaintiff and had recently contacted Plaintiff.

23. Despite Plaintiff stating he had not reached out to her or contacted her, MCCANN, suddenly and without warning, directives, or just cause, began choking and assaulting Plaintiff, all while Plaintiff was compliant, was not a threat, nor did Plaintiff threaten the use of violence.

24. Defendant COs then began to repeatedly and forcefully punch Plaintiff in the throat, face, and ribs causing Plaintiff to sustain serious and grave injuries as a result of the vicious attack.

25. Defendant COs, without warning, directives, or just cause, proceeded to savagely beat and assault Plaintiff causing Plaintiff to lose consciousness.

26. Defendants MCCANN, JEAN, SMITH, and as yet unknown DOES did nothing to stop the assault upon Plaintiff despite having an opportunity to stop Defendant COs from assaulting Plaintiff.

27. At all relevant times herein, Plaintiff had been compliant, not a threat, nor did Plaintiff threaten the use of violence.

28. The sole reason Plaintiff was attacked was due to his prior relationship with MCCANN's niece and because she had reached out to Plaintiff. Defendant COs sought to intimidate and punish Plaintiff.

29. As a result of the June 10, 2025 assault and beating, Plaintiff suffered injuries to his ribs, head, and body, contusions, multiple scrapes and lacerations, severe pain, psychological anguish, permanent injury, and disability.

30. Plaintiff did not contribute to the occurrence alleged herein in any manner whatsoever.

31. The aforementioned use of force, assault, and battery caused Plaintiff to sustain serious and grave injuries, leaving him with significant and enduring harm, including physical and psychological injuries.

32. The aforementioned use of force, assault, and beating had continued despite Plaintiff's pleas for Defendant COs to stop, and despite the fact that Plaintiff was compliant at all relevant times, was not a threat and/or did not threaten physical force and/or did not resist Defendant COs.

33. As a result of Defendant COs' use of unlawful force, Plaintiff was caused to suffer extreme and severe pain and discomfort. Plaintiff, without justification, was beaten and assaulted by Defendant COs.

34. Following each instance, Plaintiff complained to Defendant COs that he was in pain, needed medical attention, and had visible injuries. Plaintiff requested that he be taken to medical.

35. MCCANN told Plaintiff "as long a I'm working here, you're not seeing no medical attention."

36. Plaintiff's requests for medical attention were ignored and, despite it being apparent that Plaintiff had suffered serious physical injuries as a result of the actions of Defendant COs, Plaintiff was denied medical attention by Defendant COs.

37. Defendants have a duty to provide adequate staffing, supervision, protection, and competent medical and custodial care to their pre-trial detainees.

38. Since this incident, Plaintiff is aware of other individuals who have suffered the same and/or similar fate as he did, where areas within the facility are left unattended and/or understaffed by Corrections Officers during which time individual(s) have been assaulted.

39. At all relevant times mentioned in this Complaint, Defendants, each of them, separately and in concert, engaged in acts and omissions which constituted deprivation of the Constitutional rights, privileges, and immunities of Plaintiff and, while these acts were carried out under color of law, Defendants had no justification or excuse in law; the acts were instead gratuitous, illegal, improper, and unrelated to any activity in which Corrections Officers may appropriately and legally engage in the course of protecting persons, detainees, prisoners, and property, or ensure civil order.

40. The injuries Plaintiff suffered were caused solely by the conduct of Defendants and Plaintiff in no way contributed to or caused the injuries he suffered.

41. Defendants' intentional, reckless, negligent, or deliberately indifferent behavior caused Plaintiff conscious pain and suffering, permanent physical injuries, and emotional harm.

42. As a result of the vicious assault and beating, Plaintiff suffered injuries to his head, neck, and body; headaches; multiple scrapes and lacerations; severe pain; contusions; psychological anguish; permanent injury; and disability.

43. On or about June 10, 2025, Defendant COUNTY was obligated and owed a duty to Plaintiff to maintain, manage, operate, and control the aforesaid premises, as well as the Corrections Officers and activities conducted therein, in a reasonably safe and prudent manner.

44. That the aforementioned assault and beating occurred despite Plaintiff's pleas for DOES to assist and/or protect him.

45. Defendants knew and/or had reason to know and were aware of the substantial risk to the health and safety of Plaintiff and individuals like Plaintiff. Despite this knowledge, Defendants disregarded said risk.

46. At all relevant times mentioned in this Complaint, each of the Defendants had the power and the duty to restrain the other Defendants and prevent them from violating the law and the rights of Plaintiff; each of the Defendants failed and/or refused to perform that duty and failed and/or refused to restrain the other Defendants, thereby becoming a party and acting in concert to harm and bring about the injuries inflicted upon Plaintiff.

47. As a direct and proximate result of the acts of Defendants, the injuries and damages sustained by Plaintiff from the deprivation of his Fourth, Eighth, and Fourteenth Amendment rights include: injuries to his head, leg, and body; bruises; multiple scrapes and lacerations; severe pain; psychological anguish; permanent injury and disability; mental anguish; and emotional distress.

48. All the alleged acts, misdeeds, and omissions committed by Defendant COs described herein, for which liability is claimed, were done either intentionally, knowingly, or recklessly, and their proscribed conduct meets all of the standards for imposition of punitive damages.

49. The conduct of Defendants was the proximate cause of Plaintiff's injuries.

50. The injuries suffered by Plaintiff are permanent in nature.

## COUNT I
## VIOLATION OF PLAINTIFF'S FOURTH, EIGHTH, AND FOURTEENTH AMENDMENT RIGHTS FOR UNREASONABLE AND EXCESSIVE FORCE (§ 1983)
## (*Against Defendant COs*)

51. Plaintiff repeats, reiterates, and realleges each and every allegation contained in all other paragraphs of the Complaint herein with the same force and effect as if more fully set forth at length below.

52. The unlawful assault of Plaintiff by Defendant COs was conducted under color of state law within the purview of 42 U.S.C. § 1983 and within the scope of their employment by NCSD and NCCC.

53. Defendant COs, with willful and malicious intent, using the actual and/or apparent authority of Defendant LaROCCO, NCSD, and NCCC, violently assaulted Plaintiff without valid justification for such excessive force.

54. Defendant COs' aforesaid actions constituted a gross violation of Plaintiff's bodily integrity for no legitimate reason.

55. Defendant COs' actions were intentionally and recklessly done to intimidate, and did cause Plaintiff physical and emotional distress.

56. The assault and battery of Plaintiff was an abuse of power, constituted violations of bodily integrity for no legitimate purpose within the meaning of the Fourth, Eighth, and Fourteenth

Amendments, constituted a violation of Plaintiff's right to be free from unlawful force while detained pursuant to the Fourth, Eighth, and Fourteenth Amendments, and deprived Plaintiff of his liberty and right to be free from this type of physical attack.

57. The violation of Plaintiff's bodily integrity was unreasonable and without due process of law, in violation of the Fourth, Eighth, and Fourteenth Amendments of the United States Constitution.

58. As a proximate result of Defendant COs' intentional and malicious actions, Plaintiff was caused to be unlawfully assaulted, battered, placed in substantial fear for his life, sustained bodily injuries, mental torment, night terrors and nightmares, depression, fear, loss of enjoyment of life, and other physical, mental, and psychological injuries, damage to his reputation, other special damages, great mental anguish, and has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling, all to Plaintiff's damage, in an amount to be determined at trial but not less than ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorney's fees.

**COUNT II**
**VIOLATION OF PLAINTIFF'S EIGHTH AND FOURTEENTH AMENDMENT RIGHTS FOR DELIBERATE INDIFFERENCE TO PLAINTIFF'S RIGHTS/VIOLATING PLAINTIFF'S BODILY INTEGRITY (§ 1983)**
**(*Against Defendant COs*)**

59. Plaintiff repeats, reiterates, and realleges each and every allegation contained in all other paragraphs of the Complaint herein with the same force and effect as if more fully set forth at length below.

60. The harm to Plaintiff was foreseeable and a direct result of Defendants' conduct in unlawfully assaulting Plaintiff without any legitimate basis or any other lawful justification.

61. Defendants acted in conscious disregard of a great risk of serious harm to Plaintiff by unlawfully assaulting him, placing Plaintiff in substantial fear for his life and safety, and causing physical and emotional injuries to Plaintiff.

62. Defendants' conduct was intentional, with deliberate indifference and/or recklessness.

63. Defendants consciously disregarded a great risk that serious harm would result by unlawfully placing Plaintiff in a dangerous situation under color of state law that he otherwise would not have been subjected to but for Defendants' conduct.

64. Defendants were aware and/or it was reasonably foreseeable that their conduct would cause injuries to Plaintiff.

65. Defendants used their authority to create an opportunity that otherwise would not have existed for harm to occur.

66. Defendants' conduct in permitting the assault of Plaintiff constitutes conduct that shocks the conscience and was without any lawful or legitimate basis.

67. Defendants acted intentionally, with wanton or deliberate indifference and/or recklessness to Plaintiff's rights.

68. The aforesaid actions of Defendants constituted a gross violation of Plaintiff's bodily integrity for no legitimate reason, and in violation of Plaintiff's substantive due process rights guaranteed by the Eighth and Fourteenth Amendments.

69. As a result of Defendants' willing, wanton, reckless, and deliberately indifferent conduct, Plaintiff's Eighth and Fourteenth Amendment rights were violated, and he was unlawfully subjected to dangerous situations directly caused by Defendants' affirmative actions.

70. As a proximate result of Defendants' intentional, wanton, reckless, and deliberately indifferent actions, Plaintiff was caused to be unlawfully assaulted, battered, placed in substantial fear for his life, sustained bodily injuries, mental torment, night terrors and nightmares, depression, fear, loss of enjoyment of life, and other physical, mental, and psychological injuries, other special damages, has suffered great mental anguish, and has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling, all to Plaintiff's damage, in an amount to be determined at trial but not less than ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorney's fees.

**COUNT III**
**VIOLATION OF PLAINTIFF'S FOURTH, EIGHTH, AND FOURTEENTH AMENDMENT RIGHTS FOR FAILURE TO PROTECT/INTERVENE (§ 1983)**
**(*Against All Defendants*)**

71. Plaintiff repeats, reiterates, and realleges each and every allegation contained in all other paragraphs of the Complaint herein with the same force and effect as if more fully set forth at length below.

72. Defendants knew that there was a strong likelihood of harm to Plaintiff, but failed to take reasonable measures to intervene and prevent the unlawful conduct of Defendant COs, despite having opportunities to do so.

73. Upon information and belief, Defendants were on notice of Defendant COs' violent propensities to use their status as Corrections Officers to unlawfully inflict harm on inmates.

74. Defendants knew that Defendant COs had engaged in this conduct in the past by assaulting inmates, using the actual and/or apparent authority of NCSD and NCCC to carry out their violent desires.

75. Upon information and belief, Defendants were on notice of Defendant COs' violent propensity to use their status as Corrections Officers to further their violent desires.

76. Despite having such knowledge, Defendants failed to take any remedial or preventative measures to deter Defendant COs and/or other Corrections Officers from continuing to engage in official misconduct that violates the rights of the citizens they each swore to protect and serve.

77. Had Defendants intervened to stop the unlawful conduct of Defendant COs before June 10, 2025, Plaintiff would not have been subjected to the events described herein.

78. As a result of Defendants' failure to protect and failure to intervene, Plaintiff's Fourth, Eighth, and Fourteenth Amendment rights were violated.

79. As a proximate result of Defendants' intentional, wanton, reckless, and deliberately indifferent actions, Plaintiff was caused to be unlawfully assaulted, battered, placed in substantial fear for his life, sustained bodily injuries, mental torment, night terrors and nightmares, depression, fear, loss of enjoyment of life, and other physical, mental, and psychological injuries, damage to his reputation, other special damages, has suffered great mental anguish, and has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling, all to Plaintiff's damage, in an amount to be determined at trial but not less than ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorney's fees.

**COUNT IV**
**FAILURE TO SUPERVISE AND FAILURE TO TRAIN (§ 1983)**
**(*Against Defendants COUNTY and LaROCCO*)**

80. Plaintiff repeats, reiterates, and realleges each and every allegation contained in all other paragraphs of the Complaint herein with the same force and effect as if more fully set forth at length below.

81. The unlawful assaulting of vulnerable inmates by Corrections Officers, including Defendant COs, is and was foreseeable.

82. Defendants COUNTY and LaROCCO were responsible for supervising, overseeing, and controlling their subordinates in NCSD and NCCC, including Defendant COs.

83. Defendants COUNTY and LaROCCO had an express and/or implied duty to provide a reasonably safe environment for their inmates, including Plaintiff. At a minimum, they had a duty to keep him from being unlawfully assaulted by their employees, including Defendant COs, which was foreseeable based upon their past instances of misconduct, which were known to the senior officers and supervisors in NCSD and NCCC.

84. In fact, it was well known throughout the community that multiple Corrections Officers, including Defendant COs, were using their actual and/or apparent authority to assault vulnerable inmates without reason and without any legal basis.

85. Despite having this knowledge, Defendants COUNTY and LaROCCO failed to take any remedial measures to prevent foreseeable acts of abuse by Corrections Officers.

86. The countenancing of this behavior created an environment within NCSD and NCCC wherein Corrections Officers were allowed to continue with their violent behavior, which led to the Constitutional rights of vulnerable citizens being violated for their desires, including Plaintiff.

87. Defendants COUNTY and LaROCCO intentionally failed to adequately supervise, control, oversee, train, and/or monitor Defendant COs, who had histories of engaging in official misconduct, and failed to implement measures to prevent Defendant COs and other Corrections Officers from conspiring with each other to cover up their official misconduct.

88. Defendants COUNTY and LaROCCO intentionally failed to adequately supervise, control, oversee, train, and/or monitor Defendant COs and other Corrections Officers from

conspiring with each other to cover up their official misconduct and prevent them from continuously violating the Constitutional rights of individual inmates, including Plaintiff.

89. Defendants COUNTY and LaROCCO negligently hired, retained, and/or supervised Defendant COs when they knew or should have known that they posed a threat of abuse to vulnerable inmates.

90. Defendants COUNTY and LaROCCO knew or should have known of Defendant COs' violent propensities for the conduct which caused Plaintiff's injuries, prior to the occurrence of the injuries, given the knowledge of other instances of abuse that predate June 10, 2025.

91. Defendants COUNTY and LaROCCO owed a duty of care to all persons, including Plaintiff, who were likely to come under the influence of Defendant COs in their roles as Corrections Officers, to ensure that Defendant COs did not abuse their authority as Corrections Officers to injure inmates by unlawfully assaulting, battering, and/or otherwise subjecting them to abuse for no lawful reason.

92. At all times relevant hereto, Defendants' actions were willful, wanton, malicious, reckless, and/or outrageous in their disregard for the rights and safety of Plaintiff.

93. Upon information and belief, Defendants COUNTY and LaROCCO were aware that there was a substantial likelihood that permitting Defendant COs to carry on their regular duties as Corrections Officers would deprive the inmates of their civil rights but failed to take adequate measures to resolve the wrong.

94. In fact, upon hearing the allegations, Defendants COUNTY and LaROCCO still failed to take any action and failed to terminate Defendant COs' employment or title as Corrections Officers, essentially countenancing this behavior throughout NCCC.

95. COUNTY and LaROCCO's, as well as other NCSD and NCCC supervisors', failure and refusal to adequately investigate Defendant COs' actions, acquiescence in Defendant COs' conduct, failure to take any remedial action against Defendant COs, allowing Defendant COs to remain employed as officers with COUNTY, gross negligence in their supervision of Defendant COs, and deliberate indifference to the rights of others by failing to act on information that Constitutional rights were being violated by Defendant COs and other Corrections Officers, subjects them to supervisory liability for the June 10, 2025 assault and battery of Plaintiff.

96. As a proximate result of Defendants' intentional, wanton, reckless, and deliberately indifferent actions, Plaintiff was caused to be unlawfully assaulted, battered, placed in substantial fear for his life, sustained bodily injuries, mental torment, night terrors and nightmares, depression, fear, loss of enjoyment of life, and other physical, mental, and psychological injuries, damage to his reputation, other special damages, has suffered great mental anguish, and has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling, all to Plaintiff's damage, in an amount to be determined at trial but not less than ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorney's fees.

**COUNT V**
**DENIAL AND FAILURE TO PROVIDE MEDICAL TREATMENT PURSUANT TO THE EIGHTH AND FOURTEENTH AMENDMENTS**
**(*Against All Defendants*)**

97. Plaintiff repeats, reiterates, and realleges each and every allegation contained in all other paragraphs of the Complaint herein with the same force and effect as if more fully set forth at length below.

98. Defendants had an affirmative duty to provide and administer health and medical services to Plaintiff and other NCCC pre-trial detainees.

99. Defendants, as previously alleged, had a duty and obligation to provide Plaintiff and other NCCC pre-trial detainees reasonable and adequate health and medical services.

100. Defendants, on information, had knowledge that the health care they provided and/or were responsible for providing to Plaintiff and other NCCC pre-trial detainees was deficient, inadequate, and incompetent.

101. On information, the health and medical care provided by Defendants, or which they were responsible for providing to Plaintiff, failed to meet an acceptable standard of treatment and care in terms of modern medicine, technology, and current beliefs about human decency.

102. On information, the health and medical care provided by Defendants, or which they were responsible for providing, created an excessive risk to Plaintiff, and the harm to which Plaintiff was exposed was sufficiently serious as to implicate his Constitutional rights.

103. On information, Defendants knew that Plaintiff's medical condition constituted a serious need for competent and adequate medical care and treatment.

104. On information, Defendants knew of and ignored the aforesaid excessive risk to Plaintiff's health.

105. The denial of adequate medical care as aforesaid created a condition of urgency, where pain, emotional distress, disability, permanent injury, or death was likely.

106. Defendants' policies, practices, customs, actions, and failures to act constituted deliberate indifference to the serious medical needs of Plaintiff.

107. Defendants were deliberately indifferent to the serious medical needs of Plaintiff.

108. As a direct and proximate result of the foregoing, Plaintiff was subjected to great physical and emotional pain and suffering.

109. Defendants' conduct demonstrated reckless and/or callous indifference to the federally protected rights of Plaintiff.

110. As a direct and proximate result of the foregoing, Plaintiff was subjected to cruel and unusual punishment and denial of adequate medical care and treatment.

111. As a proximate result of Defendants' intentional, wanton, reckless, and deliberately indifferent actions, Plaintiff was caused to be unlawfully assaulted, battered, placed in substantial fear for his life, sustained bodily injuries, mental torment, night terrors and nightmares, depression, fear, loss of enjoyment of life, and other physical, mental, and psychological injuries, damage to his reputation, other special damages, has suffered great mental anguish, and has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling, all to Plaintiff's damage, in an amount to be determined at trial but not less than ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorney's fees.

**COUNT VI**
**MONELL**
***(Against Defendant COUNTY)***

112. Plaintiff repeats, reiterates, and realleges each and every allegation contained in all other paragraphs of the Complaint herein with the same force and effect as if more fully set forth at length below.

113. Upon information and belief, it was the custom, policy, and practice of COUNTY to tolerate, condone, and encourage Constitutional violations, such as those alleged by Plaintiff above, by failing to properly punish, charge, reprimand, and investigate allegations and incidents of misconduct by Corrections Officers.

114. Employees of COUNTY, such as Defendant COs in this action, were aware at all times alleged in this Complaint that their unconstitutional conduct would not be investigated or

questioned, and that they would receive no reprimand or punishment for their conduct and, further, that they would be indemnified from civil liability regardless of the illegality or unconstitutionality of their actions.

115. By failing to supervise, train, and reprimand such Corrections Officers, COUNTY caused the injuries to Plaintiff through the actions and inactions of Defendant COs.

116. By maintaining a *de facto* policy of automatic indemnification, COUNTY caused the injuries to Plaintiff through the actions and inactions of Defendant COs.

117. Upon information and belief, it was the custom, policy, and practice of COUNTY to blatantly ignore complaints and/or widespread allegations of assault, battery, and/or other malfeasance against inmates by the Corrections Officers in order to shield COUNTY from receiving any bad press that would be generated from an investigation of misconduct by the Corrections Officers.

118. Upon information and belief, this custom, policy, and practice of COUNTY to ignore complaints and/or widespread allegations of assault, battery, and other malfeasance against inmates by the Corrections Officers created an environment where foreseeable Constitutional violations by the Corrections Officers were rampant, including the violations of Plaintiff's Constitutional rights by Defendant COs.

119. COUNTY's failure to take action against Defendant COs involved in this incident and in other similar incidents was part of a custom, practice, and procedure of neglect and deliberate indifference that directly caused the injuries to Plaintiff.

120. As authorized representatives of Defendant COUNTY, the Corrections Officers' conduct of threats of violence and acts of assault and battery, such as against Plaintiff, constituted

a custom, policy, and practice which renders Defendant COUNTY liable to Plaintiff as a "Person" acting under the color of state law.

121. These customs, policies, and practices, which were enforced by Defendant COUNTY, were the moving force, proximate cause, or affirmative link behind the conduct causing Plaintiff's injuries.

122. Had COUNTY investigated serious complaints of assault and/or widespread allegations of same prior to June 10, 2025, Defendant COs would not have been in a position to violate Plaintiff's Constitutional rights.

123. COUNTY is therefore liable for violations of Plaintiff's Constitutional rights as caused by Defendant COs, as described in more detail in the foregoing paragraphs, and Plaintiff has suffered damages therefrom.

124. That, by virtue of COUNTY's failure and refusal to adequately investigate Defendant COs' actions, acquiescence in Defendant COs' conduct, failure to take any remedial action against Defendant COs, allowing Defendant COs to remain employed as officers with NCSD and NCCC, gross negligence in their supervision of Defendant COs, and deliberate indifference to the rights of others by failing to act on information that Constitutional rights were being violated by Defendant COs, Defendant COUNTY, which employed these Corrections Officers and policymakers during the relevant time period, exhibited a *de facto* custom, policy, or usage of unconstitutional conduct sufficient for the imposition of municipal liability under *Monell v. Dept. of Social Services*, 436 US. 658 (1978).

125. As a proximate result of Defendants' intentional, wanton, reckless, grossly negligent, and deliberately indifferent actions, Plaintiff was caused to be unlawfully assaulted, battered, placed in substantial fear for his life, sustained bodily injuries, mental torment, night

terrors and nightmares, depression, fear, loss of enjoyment of life, and other physical, mental, and psychological injuries, damage to his reputation, other special damages, has suffered great mental anguish, and has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling, all to Plaintiff's damage, in an amount to be determined at trial but not less than ONE MILLION DOLLARS ($1,000,000.00) plus attorney's fees.

**COUNT VII**
**ASSAULT (PENDENT)**
**(*Against All Defendants*)**

126. Plaintiff repeats, reiterates, and realleges each and every allegation contained in all other paragraphs of the Complaint herein with the same force and effect as if more fully set forth at length below.

127. Defendant COs' physical abuse of Plaintiff was entirely unjustified and constitutes an intentional assault upon Plaintiff.

128. Defendant COs, by their conduct, placed Plaintiff in fear of imminent harm and offensive conduct.

129. As a proximate result of Defendants' intentional, wanton, reckless, and deliberately indifferent actions, Plaintiff was caused to be unlawfully assaulted, battered, placed in substantial fear for his life, sustained bodily injuries, mental torment, night terrors and nightmares, depression, fear, loss of enjoyment of life, and other physical, mental, and psychological injuries, damage to his reputation, other special damages, has suffered great mental anguish, and has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling, all to Plaintiff's damage, in an amount to be determined at trial but not less than ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages.

**COUNT VIII**
**BATTERY (PENDENT)**
***(Against All Defendants)***

130. Plaintiff repeats, reiterates, and realleges each and every allegation contained in all other paragraphs of the Complaint herein with the same force and effect as if more fully set forth at length below.

131. Battery is the intentional, wrongful physical contact with another person without consent.

132. Defendant COs' intentional physical abuse of Plaintiff was entirely unjustified, done without Plaintiff's consent, and constituted battery upon Plaintiff.

133. As a proximate result of Defendants' intentional, wanton, reckless, and deliberately indifferent actions, Plaintiff was caused to be unlawfully assaulted, battered, placed in substantial fear for his life, sustained bodily injuries, mental torment, night terrors and nightmares, depression, fear, loss of enjoyment of life, and other physical, mental, and psychological injuries, damage to his reputation, other special damages, has suffered great mental anguish, and has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling, all to Plaintiff's damage, in an amount to be determined at trial but not less than ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages.

**COUNT IX**
**NEGLIGENT/GROSS NEGLIGENT HIRING, RETENTION, TRAINING, AND SUPERVISION (PENDENT)**
***(Against Defendants COUNTY and LaROCCO)***

134. Plaintiff repeats, reiterates, and realleges each and every allegation contained in all other paragraphs of the Complaint herein with the same force and effect as if more fully set forth at length below.

135. Defendants knew, or were negligent in not knowing, that Defendant COs posed a threat of abuse to vulnerable inmates, including Plaintiff.

136. Defendants COUNTY and LAROCCO, by and through their respective agents, servants, and/or employees, had actual knowledge, knew, or reasonably should have known of Defendant COs' dangerous and violent propensities and/or that Defendant COs were unfit agents due to their violent propensities and prior instances of official misconduct.

137. Defendants COUNTY and LAROCCO, by and through their respective agents, servants, and/or employees, failed to implement the proper programs and/or internal guidelines and regulations to adequately screen violent and/or abuse prone officers before they are allowed to continue to perform their full duties as Corrections Officers, after receiving knowledge of prior instances of misconduct.

138. The acts of Defendant COs described herein were undertaken, and/or enabled by, and/or during the course, and/or within the scope of their employment, appointment, and/or agency with Defendant COUNTY.

139. Defendants COUNTY and LAROCCO owed Plaintiff a duty to protect him from Defendant COs' violent tendencies and/or to implement the proper programs and/or internal guidelines and regulations to adequately screen Corrections Officers who are prone to violence and/or other forms of abuse before allowing them to continue to perform their full duties as Corrections Officers.

140. The countenancing of this behavior created an environment within NCCC wherein the Corrections Officers were allowed to continue with their violent behavior, without ever facing an investigation into same or fearing any repercussions for their malfeasance, which led to the Constitutional rights of vulnerable inmates being violated for their violent desires.

141. Defendants COUNTY and LAROCCO's willful, wanton, grossly negligent, and/or negligent acts of commission and/or omission directly and/or proximately caused the damages set forth herein at length.

142. In fact, upon hearing of the allegations, Defendants COUNTY and LAROCCO still failed to take any action and failed to terminate Defendant COs' employment or title as Corrections Officers, essentially countenancing this behavior throughout NCCC.

143. As a proximate result of Defendants' intentional, wanton, reckless, grossly negligent, negligent, and deliberately indifferent actions, Plaintiff was caused to be unlawfully assaulted, battered, placed in substantial fear for his life, sustained bodily injuries, mental torment, night terrors and nightmares, depression, fear, loss of enjoyment of life, and other physical, mental, and psychological injuries, damage to his reputation, other special damages, has suffered great mental anguish, and has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling, all to Plaintiff's damage, in an amount to be determined at trial but not less than ONE MILLION DOLLARS ($1,000,000.00).

**COUNT X**
**NEGLIGENCE (PENDENT)**
**(*Against All Defendants*)**

144. Plaintiff repeats, reiterates, and realleges each and every allegation contained in all other paragraphs of the Complaint herein with the same force and effect as if more fully set forth at length below.

145. Defendants had a duty to prevent and cease the unlawful assault and battery upon Plaintiff as well as a duty to hire, train, investigate, supervise, and discipline Defendant COs and prevent other wrongful acts that were committed against Plaintiff.

146. In actively inflicting and failing to prevent the above stated abuses incurred by Plaintiff, all of the Defendants acted unreasonably, recklessly, and negligently in failing to exercise the slightest amount of due care to secure and protect the civil and Constitutional rights of Plaintiff against assault and battery and other violations. Said rights are guaranteed to Plaintiff by 42 U.S.C. § 1983 and by the Fourth, Eighth, and Fourteenth Amendments of the Constitution.

147. The breach of duty by Defendants was a direct and proximate cause of the harm suffered by Plaintiff. Said harm includes physical harm, pain and suffering which continues to this day, monetary expenses, personal humiliation, damage to reputation and loss of standing in the community, and severe physical, emotional, and psychological damage.

148. That, by reason of the foregoing, Plaintiff suffered and continues to suffer irreparable injury and monetary damages, in an amount to be determined at trial but not less than ONE MILLION DOLLARS ($1,000,000.00).

**COUNT XI**
***RESPONDEAT SUPERIOR* (PENDENT)**
**(*Against Defendant COUNTY*)**

149. Plaintiff repeats, reiterates, and realleges each and every allegation contained in all other paragraphs of the Complaint herein with the same force and effect as if more fully set forth at length below.

150. By virtue of Defendant COs' employment with Defendant COUNTY and their actions within their scope of their employment, Defendant COUNTY is liable for Defendant COs' actions under a theory of *respondeat superior*.

151. As a result of the above-described conduct, Plaintiff was caused to be assaulted, battered, placed in substantial fear for his life, sustained bodily injuries, mental torment, night terrors and nightmares, depression, fear, loss of enjoyment of life, and other physical, mental, and

psychological injuries, damage to his reputation, other special damages, has suffered great mental anguish, and has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling, all to Plaintiff's damage, in an amount to be determined at trial but not less than ONE MILLION DOLLARS ($1,000,000.00).

## JURY DEMAND

152. Plaintiff demands a Trial by Jury of all causes of action so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff BRIAN PEREZ respectfully requests judgment against Defendants COUNTY OF NASSAU, NASSAU COUNTY SHERIFF ANTHONY J. LAROCCO, in his individual and official capacities, CORRECTIONS OFFICER CPL. MCCANN, in his individual and official capacities, CORRECIONS OFFICER JEAN, in his individual and official capacities, CORRECTIONS OFFICER SMITH, in his individual and official capacities, and CORRECTIONS OFFICER JOHN DOES #1-10 (fictitiously named), in their individual and official capacities as follows:

A. Under the First Count, in the amount of ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorney's fees;

B. Under the Second Count, in the amount of ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorney's fees;

C. Under the Third Count, in the amount of ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorney's fees;

D. Under the Fourth Count, in the amount of ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorney's fees;

E. Under the Fifth Count, in the amount of ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorney's fees;

F. Under the Sixth Count, in the amount of ONE MILLION DOLLARS ($1,000,000.00), plus attorney's fees;

G. Under the Seventh Count, in the amount of ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages;

H. Under the Eighth Count, in the amount of ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages;

I. Under the Ninth Count, in the amount of ONE MILLION DOLLARS ($1,000,000.00);

J. Under the Tenth Count, in the amount of ONE MILLION DOLLARS ($1,000,000.00);

K. Under the Eleventh Count, in the amount of ONE MILLION DOLLARS ($1,000,000.00); and

L. Costs and disbursements of this matter; and

M. Such other and further relief as the Court deems just and proper.

Dated: Garden City, New York
September 8, 2026

Respectfully submitted,
**HORN WRIGHT, LLP**
*Attorneys for Plaintiff*

By: /s/*Sheetal Paul*
Sheetal Paul
400 Garden City Plaza, Suite 500
Garden City, New York 11530
Tel: 516.355.9696
shp@hornwright.com